5102, San Carlos Apache Tribe v. United States Mr. Horne Thank you Your Honor, may it please the Court, my name is William Horne, appearing on behalf of the San Carlos Apache Tribe. I'm joined today by co-counsel, Mr. Steven Titla, who's a member of the tribe and tribal co-counsel. For sake of brevity, we'd like to focus on two of the many issues presented in the briefing on this. And the first is that mandatory exhaustion of remedies principles, as articulated in the Martinez case, and the Samish Indian Nation necessary legal element precedent, we believe both established that the San Carlos claim accrued in 2006 and therefore its recent filing was indeed timely. The tribe's loss of its water rights that underpins its claim was not permanently, objectively, or knowingly fixed until 2006. And the fixing event was the necessary legal determination that the Globe Equity Decree, to which San Carlos was not a party, was binding on the tribe, and the previously unfixed unresolved scope of that same decree was defined so as to cut off permanently the tribe's full complement of Federal Reserve and aboriginal water rights claims. But didn't the Supreme Court of Arizona decide that it's pretty well settled with a 1935 decree? Well, no, Your Honor, the court... There wasn't much doubt about it. Well, the court decided, in its opinion, as matters of comedy, that it found that both the decree was binding on the tribe and the tribe, the court also then fixed some of these unresolved scope issues. For example, the first time that the decree was alleged to be binding on San Carlos was in the 2001 motion before private defendants in the state's Gila River adjudication. And that was what was ultimately resolved by the Arizona Supreme Court. Until that 2001 motion by those private parties, there had been no legal allegation that the tribe was, in fact, bound by the decree. And of course, the tribe's position that was shared by the United States all the way through the Arizona Supreme Court litigation was that because the tribe was not a party to the decree, because there was evidence of inadequate representation by the United States, that the decree was binding on San Carlos. And therefore, it was free to pursue its full entitlement of winters and aboriginal water claims to the Gila River. And only when those rights were cut off by the 2006 ruling had the tribe, in fact, lost its water rights, for which it now seeks a compensation. What is your understanding of the reason for the government's change in position? Your Honor, we do not know. All we know is that the United States filed over 100,000 acre-feet of water claims on the Gila River in the state adjudication on behalf of San Carlos in 1985. And in the U.S.'s own filings, it said that essentially the Globe Equity Decree was not limiting on the tribe and did not bar the tribe or the United States on the tribe's behalf from securing for it a full complement of winters reserved rights and aboriginal water rights. That almost runs counter to your argument that you didn't get adequate representation from the government. We were getting adequate representation commencing in 1985. The fundamental problem was that in the original decree that the United States entered on behalf of the tribe without the tribe's participation in 1935 had really left the tribe, now of course, bereft of water because of the 2006 determination by the Arizona Supreme Court. We think that there's an important exhaustion of remedies aspect to this that needs to play into mind. The tribe, of course, filed its full complement of rights claims in 1979 in U.S. District Court. The state of Arizona immediately moved to have the tribe's federal claims removed to state court. That case went to the U.S. Supreme Court in 1983 in Arizona versus San Carlos Apache Tribe. San Carlos was compelled to enter into the state adjudication to pursue its water rights. What's similarly important is just a few years later, the neighboring White Mountain Apache Tribe, which did not want to go to state court and resisted the United States representing it on its behalf, filed a series of unitary mismanagement claims regarding water rights in U.S. court. That went to the Ninth Circuit. The Ninth Circuit told the neighboring White Mountain tribe, any of these collateral or ancillary water rights mismanagement claims are untimely. You need to go back. You need to participate in the state's adjudication. Until the results of that adjudication are complete and we know whether or not your water rights have been mismanaged, you have no right to bring any of these ancillary claims. They are premature. Obviously, San Carlos took cognizance of that and diligently pursued its wet water rights, if you will, for all these years in the Arizona adjudication, only losing its rights permanently and definitively and objectively in 2006. So any of the intimations that the tribe engaged in some kind of forum shopping on this very issue is belied by, of course, the Supreme Court decision directing that it had to go into the state adjudication. I think that the U.S. flip-flop, if you will, about the binding effect of the decree and the scope of the decree also spotlights the underlying and necessary legal issues that make this a Samish Indian Nation case and not necessarily a Catawba case. You know, the fundamental issue here of the early two of them, number one, was the decree in fact binding on the tribe, notwithstanding the fact that it was not a party and the decree itself constitutes in our mind prima facie evidence of inadequate representation? And then, of course, the second question was, what was the full scope of that decree? It used only the terms irrigation water rights, it never mentioned winters, it never mentioned aboriginal rights, it never used the term federal reserve water rights, and in the tribe's mind under the Indian canon of construction, that meant pretty clearly that that decree did not reach those standard federal Indian water rights. And until those two issues were resolved, its water rights weren't lost and any form of compensation claim for lost rights would have been completely untimely. And, of course, it pursued those rights, the decision came down adverse to it in 2006, and shortly thereafter, the tribe filed its claim in the court below for the now lost water rights. And in that sense, we believe that this case is clearly governed by the Samish precedent because there the Samish tribe spent nearly 30 years in court seeking to get a determination made on whether or not the BIA had wrongly denied it recognition and, therefore, wrongly denied it access to BIA benefits. But almost 30 years had to pass before that necessary legal element, did BIA make an error in failing to recognize the tribe. Only when that issue was resolved in a court of law was the discord hold that the Samish claim accrued. I think that that same type of 30-year window, we point that out just because I think a lot of people have it in their mind, what's the question? Why things took so long to work out? And obviously, it took a long time to work out there, it took a long time to work out here as well. The Arizona Supreme Court action, but there was a fact in Samish that was not present here, that there needed to be a district court determination, which wasn't necessary here. The decree was clear here. Your Honor, no, we would submit that the decree was not clear and that there were two separate legal issues. Didn't the Supreme Court of Arizona find that it was clear? The Arizona Supreme Court, well, not really, it made two separate findings. It said that it was going to find the decree binding on San Carlos as a matter of comity. We would note, as we pointed out in our briefs in the Truckee-Carson Paiute Indian tribe litigation. Excuse me. The Supreme Court said it is difficult to imagine more explicit language indicating that the decree was intended to resolve all of the parties' claims to the Gila River main stem. We disagreed with that finding at the time and would note that the court looked through the actual language in the decree and it found that the decree did in fact reach winters and aboriginal rights, not based on any language within the four corners of the decree, but based on language in the U.S. complaint filed in about 1925. In addition to that, there were unresolved scope issues. The four private parties, of course, in 2001 were the first to allege that the decree was in fact binding on the tribe, but many of those same parties also alleged that the decree reached the tributaries to the Gila River that were on the reservation. The Arizona Supreme Court decision not only resolved the binding issue, but it also had to look at the scope issues and resolve two scope issues, one against the tribe saying it did reach your winter's rights on the main stem of the Gila, but it ruled for the tribe saying that no, the globe equity decree did not reach the tributaries as alleged by other parties. And so I think that there was enough fundamental ambiguities built into the globe equity decree along with the presumptive non-binding effect. That's the tributaries. I mean, on page 827, the decree says the parties to whom rights to water are decreed in this cause are bound as to, and you go down to the bottom of 827, any right, title, or interest in or to the waters of the Gila River. Well, the tributaries are obviously something different than the Gila River itself, so it's understandable why there might be an open question about that, but the Gila River itself is quite explicitly covered. Well, I can say is that other parties to the Gila River, to the globe equity decree, and I remember, remind the court that the tribe was never a party to the decree. It was represented by the United States. Other parties vociferously argued that that language reached the tributaries and that issue was finally resolved by the Supreme Court. We only point that out just to demonstrate that the decree was beset by a whole set of fundamental uncertainties, both... The only thing that was beset by is whether or not it resolves all of the water rights for the Gila River, for the people who are affected by this decree. That's the one thing it doesn't seem at all uncertain about. That was on the scope side, which was one of the issues that was, of course, finally resolved by the Arizona court, but of course... The Arizona court concluded that the language was quite explicit, so... It reached the Gila, yes. In light of all of that, it's hard for me to understand your argument that you could bring the claim, or you wouldn't have known that you had to bring the claim back in 1935. Well, the United States joined us in 1985 in its claims to the Gila main stem on behalf of the tribe, argued that the Gila language did not reach the main stem of the river and did not foreclose the United States from claiming over 70,000 acre feet of water to the main stem under the Winters' right on behalf of the San Carlos tribe, so the party that negotiated the decree on the tribe's behalf believed that it did not reach those water rights and did not foreclose those water rights. They didn't believe that it foreclosed water rights for... The main stem of the Gila. Non-irrigation... No, location versus type of water right. Which thing was it the government... The United States 1985 filing, which we provided in the record, was for both Winters' rights, irrigation land and aboriginal rights, which is general use on the reservation for its tribal homeland, and the United States contended that the globe equity decree that it negotiated did not foreclose either the United States or the tribe from pursuing a full complement of those two sets of water rights from the main stem of the Gila River. The United States on behalf of the tribe, is my understanding correct that for you to agree with all of the things that have happened since that the tribe what was inadequately represented at the time of the globe settlement? No, your honor. That issue was unresolved until 2006, and only in 2006 was the decree made binding on the tribe and therefore its water rights laws actually and definitively fixed. Until then, this was an unresolved issue, and as I indicated, any action by the tribe seeking compensation for lost water rights would have been premature and not right. Unresolved both because the tribe was not present and because the United States' trustee, again, inadequately represented, that is... Is that a threshold question? Yeah. The necessary legal element that remained unresolved was did the decree bind the tribe and then in a secondary capacity, what was the scope of that decree? And until those two legal elements were fixed in 2006, any compensation claim would have been premature because no water rights had in fact been lost until that point in time. Okay. Well, then let's hear from the government and we'll save you a rebuttal time. Thank you, your honor. Ms. Rowland. Good morning, your honors. May it please the court. The Court of Federal Claims ruling was that the tribe's claim accrued in 1935, and this ruling can be affirmed for three fundamental reasons. The first is that the complaint in this case demonstrates that the tribe's claims are predicated on the terms of the globe equity decree, and that those terms were in place and in effect as of 1935. But what about their claim that in 1985, the government who negotiated the decree on behalf of the Native Americans didn't itself believe that the decree would prevent them from getting these additional water rights? I apologize in advance. I feel uncomfortable articulating the government's thought process and its position in that litigation, but my threshold answer to your question is number one. What the government thought or did in 1985, 30, 50 years after the globe equity decree was signed, really isn't relevant to the question of whether the tribe knew or should have known what was stated. This is not what they thought. It's what they said. The position that they took in court. This is really quite a very serious change of position, and I think it's critical to understand. Counselor, can you let Judge Newman finish? I'm sorry. I think let us try and understand when the government has taken a position under which the claim had not ripened, the claim that's now here, and now has taken a different position and said this claim ripened 60, 70 years ago is something that I think we cannot ignore. I don't believe there is any document where the government said that the tribe's current claim didn't ripen in 1935. What the government stated, I believe, in the 1985 litigation was that to the extent the tribe believed that they were entitled to additional rights other than what were already stipulated to in the 1935 decree, that they could adjudicate those matters in the state adjudication proceeding that was ongoing, and so if they wanted to make claims of aboriginal or federal reserve water rights, they were able to do so in the ongoing state court proceeding. The government, I don't believe, ever stated that the decree did not address their aboriginal and federal reserve water rights, and the government never said it inadequately represented the tribe. What they simply said is to the extent there are issues in the tribe's mind, they may litigate those. That's all that was stated, but what we need to first focus at is can, by looking at the four corners of the decree that existed in 1935, see if the tribe had a cause of action, the cause of action that they've currently brought, and the answer is yes. If we look, for example- But the tribe wasn't a party to that litigation. The decree, to back up, the United States, when it brought the globe equity litigation, made it clear that it was representing itself, other parties, and the San Carlos Apache tribe, and the decree itself indicates that the United States was representing the tribe. I'm not really certain that I understand how it is that the tribe wasn't bound by that decree, and to the extent the tribe felt that it wasn't, or that the United States should not have been representing it in 1935, that cause of action, too, accrued in 1935. The time for the tribe to challenge the United States' representation in the globe equity litigation was indeed in 1935. But I asked the court to look closely at the tribe's complaint here, and if, for example, the court were to look at page A2 of the red brief, which is the appendix, and it's the tribe's complaint. At paragraph two of the complaint, it states the following, the 6,000 acre feet of water decreed to the tribe in 1935 from the Gila River was a mere pittance of water and is compared to the amount of water stipulated to by the United States under the decree for other parties to the decree. Similarly, if the court looks at page A11 of the appendix, at paragraph 28, the complaint indicates the tribe's dissatisfaction because under article six, parenthetical two, of the decree, the secretary stipulated that the tribe is only entitled to divert 6,000 acre feet of surface flow from the Gila River each year. This indicates several things, and this is just one example. It indicates that the tribe's current complaint is turning to the terms of the decree itself and saying the government's representation was inadequate. It's also indicating that the decree itself indicates that the tribe only gets 6,000 acre feet of water. Indeed, if the court examines the decree, there is no provision in there that indicates that in addition to the 6,000 acre feet of water that are expressly referred to in the decree, the tribe gets additional water rights in the form of either aboriginal rights or federal reserve water rights. So you're telling us that the government changed its position in the 1980s? No, no, no. The government didn't change its position. The government didn't take any particular position in extraneous litigation with respect to the 1935 decree. At the time of the decree, what the government's position, if you will, was in 1935 is what were the terms of the decree itself. And the tribe looking at the decree, the tribe or anyone else looking at it— That isn't the question I asked. The government's position in the 1980s diverged from the initial position in that they represented the tribe and represented the tribe's interests in seeking the tributary rights and other relationships, and did not state that this is final and over, res judicata, and you can't go into court. The United States did not change its position from the time of the 1935 decree to the time of the 1985 litigation. As I said, the government simply said in 1985 and thereafter that if the tribe wanted to pursue aboriginal and Federal Reserve water rights, that it most certainly could attempt to do so in the state court proceedings. That's simply—and that can put to rest what the government's position was in 1985, but clearly, your honors must understand, we can't get to 1985 until we first address what was present in 1935. And looking at the complaint, it's clear that the complaint is based on the terms of the decree as they existed in 1935, and also it's based on the facts that existed as of 1935. You're saying we should ignore everything that happened since—what about the state court final adjudication? Your honor, yes, it's my position that the court can ignore everything after 1941, which is when this cause of action—the statute of limitations expired on this cause of action. And that's because, for example, as the Court of Federal Claims held, the tribe's lawsuit here is based on the United States litigation and negotiation of the globe equity matter. So you're telling us that the Ninth Circuit erred in sending them to state court? The Ninth Circuit. I'm sorry, I'm not following. You're saying that the entire action in the state court was barred and could not have been brought? No, no, your honor. No, I'm not stating that. I'm sorry, I'm not following your line of questioning. I'm trying to understand these various changes of position. I'm trying to understand retrospectively if during these various intervening stages as the tribe, perhaps belatedly, tried to establish or recover rights that they thought that they should have had, and they are moved from court to court, the litigation proceeds from court to court, and they say—and it does look as if everything was finally resolved in the Arizona state court. But you're telling us, no, it was finally resolved 50 years earlier. As to the water rights of the tribe in the Gila River mainstream, yes, the matter was resolved in 1935, and that's what the decree states. As Judge Moore indicated, if one looks at the language of the decree, it's quite clear that the decree attempted to—was intended to settle all of the claims and rights of the parties involved. And if the tribe were to look at that language, they would realize that if they felt the decree should have included language that expressly addressed aboriginal and Federal Reserve water rights, the time for them to complain about that was in 1935. But going back to the point I was about to make, the Court of Federal Claims raised a very important point in reaching its decision here. The tribes are taking issue with the government's role in litigation in 1935. The tribe does not have a problem. There is no fact that establishes that the tribe is challenging the government's action in any litigation subsequent to 1935. It's the allegations of inadequate representation and breach of trust are based on the government's actions in the 1935— The question is whether they knew or should have known they had inadequate representation, right? That's the question, really. When did they knew or should have known that the government's representation of them was inadequate? Well, I'll offer you an example. Can you answer my question first? Yes. No, and I was going to offer you an example from the— Is the question before us, when they knew or should have known they had inadequate representation— In 1935, based on the language of the decree. You can't answer the question like that. I'm sorry. Is the question before us, when did they know or should have known that they had inadequate representation? If they knew or should have known in 1935, then we affirm. If they shouldn't have known in 1935, but yet shouldn't have known until the Arizona decision was made, then the cause of action wouldn't accrue until then, right? Because the heart of the legal issue we have to decide, the legal issue here is when did they know or should have known such that a claim would accrue? They knew or should have known in 1935. I understand that's your argument, but that's what we have to decide, right? Yes, Your Honor, and I apologize that I'm not understanding your question. Is it the issue before this court for us to decide when the tribe knew or should have known they had inadequate representation? Yes, yes. Okay. So if that is their issue, when they knew or should have known, if I were to look at the decree, and if I were, contrary to the Arizona Supreme Court, to conclude that— I don't think the decree is clear at all. Suppose the decree, in fact, used irrigation water throughout it. Suppose the decree throughout its entire preface, every time it said water, it talked about irrigation water. Then it would be fair to say if a court later came and construed the decree as covering not just irrigation water, but non-irrigation water uses, aboriginal water uses, winters type things, that that's not clear at all. And under those circumstances, there would be no reason for them to know or should have known back in 1935, if the decree on its face, decree on its face had irrigation rights. I believe if I followed your hypothetical, that would be the case. In this case, however, to the extent one can say that the decree is ambiguous, for example, it may be because it's subject to, for example, two interpretations. One being the fact that there is not a provision that says, in addition to the 6,000 acre-feet of water, the tribe gets additional water rights in the form of aboriginal rights or federal rights. I guess here's my problem. You point to language in the complaint, which I think is very fair by you to do, that points to their dissatisfaction with the 6,000 feet. And I think that was plain as day in the 1935 decree. So I'm very sympathetic to your argument. It seems hard for me to accept that they didn't have to argue about 6,000 feet of water back in 1935. But to the extent that they're arguing, but wait a minute, the document itself was ambiguous. And while we may have only been entitled to 6,000 square feet for irrigation uses, I know they dispute that. But they should have gotten more in their view. The question is, the document told them what they were getting. So it's hard for them to argue today about that. But what about the non-irrigation and the winter's aboriginal water rights? To the extent that there is ambiguity over those, why don't they get the benefit of waiting until Arizona resolves that, no, you don't have coverage, or the document does, in fact, cover those? Simply because the document or an instrument is ambiguous doesn't necessarily mean that one can sit on their rights and just wait until something else occurs in the future to determine if they can bring a cause of action. If the decree could be read as not providing aboriginal rights or Federal Reserve water rights to the tribe, it was incumbent upon them to bring a lawsuit and allege exactly what they're alleging here. But what about their argument? They actually didn't think it was ambiguous. They didn't argue it was ambiguous. I mean, they did at some point, probably. But their initial argument was, this decree doesn't cover non-irrigation uses of water. So their argument wasn't, there's ambiguity, and that's why we should bring our ineffective assistant of counsel argument. My understanding is their initial arguments in Arizona were that this decree only applies to irrigation water. Isn't that right? Their claim in the Arizona litigation was that they sought to establish aboriginal and Federal Reserve water rights. And under the theory, I suppose, that they felt that the decree didn't cover those rights. Not under the theory, I suppose. I mean, they actually said it expressly about a million times. The important point is that nothing changed between 1935 and the time they brought that lawsuit that would change anything. The facts that existed in 1935 that are the basis for their lawsuit now are the same facts that exist now. There's only a legal determination by a judge. And as Your Honor pointed out, it's a judge who found that the decree was not ambiguous as to the fact that it settled all of the party's claims and rights to water in the Gila River. But isn't that the heart of what we have to decide? Because the issue here is, when should they have known that the government's assistance that was provided to them was ineffective? I mean, you're not arguing the government's assistance was, in fact, adequate. You're not taking that argument on appeal. You're arguing their time barred. So the question is, we assume, for purposes of these facts, that the government's assistance was ineffective. And then the question is, at what time should they have known that such that they could assert it? And so isn't the heart of the question is, don't I have to look at this decree and independently make the same decision the Arizona judge did? I have to look at this decree and say, should they have known in 1935 when this was signed that the government was ineffective? That's part of the analysis. And the court can look to the complaint to determine. The complaint will assist the court in looking to those elements of the decree that the complaint's based on. The complaint refers back to the decree time and time again, even for the aboriginal rights and the Federal Reserve right of rights. And I draw the court's attention to page A15 of the red brief. And it's a paragraph from the complaint. All of it goes back to the decree, what the government did or did not do in 1935. As I said, all of the facts on which this case is predicated existed in 1935. There are no set of facts that have changed or have come to light since 1935 that this lawsuit is based on. Any more questions for Mr. Elmtree? Any more questions? Thank you, Mr. Elmtree. Thank you. Mr. Horne. Thank you, Your Honor. Let me just briefly address a couple of points regarding the US position. Its filing in 1985 stated that the claim for 72,678 acre-feet of water from the main stem Gila is for the irrigation of approximately 12,133 acres of irrigable lands along the Gila River. That is the winter standard of measurement. Until the federal court with jurisdiction over the decree finally determines the scope of the decree and the res judicata effect of that decree, the United States considers this claim to be an appropriate part of the tribe's reserve water rights claim. That was their 1985 filing in the Arizona adjudication. And where is that? You said you provided that to us, but where is that? I'm quoting from page 17 of our opening brief, and it's also found at appendix 38. In addition, when the case was being litigated before the Arizona Supreme Court, the United States stated, as we explained under controlling precedent of the Ninth Circuit, the inadequate representation exception to res judicata as set out in section 42.1e of the restatement second of judgments is available to the Apaches, citing the Truckee Carson irrigation litigation. The Apaches clearly raised this exception in the proceedings below, and the Superior Court clearly failed to address it either on the law or the facts. So the United States basically agreed that, number one, the decree was unresolved. The res judicata effect and the binding nature of the decree had not yet been resolved, and that the tribe, as a matter of due process under federal precedent, was entitled to a trial on the merits to resolve this fundamental necessary issue about whether or not it was limited by the decree. I think, second, counsel for the United States makes lots about what's in the complaint. We presented the issue, the evidence, and the information in the complaint because it was evidence of inadequate representation, which under the second restatement, and Nevada versus U.S., and recently enunciated by Taylor versus Sturgill, clearly demonstrates that the globe equity decree was presumptively non-binding on the tribe. That's what that information is presented for, to demonstrate that under the objective standard, it was reasonable for the tribe to conclude that it was not bound by this by the United States, and therefore, it was able to pursue its full complement of water rights, which it did in tandem with the U.S. until 2006. I think that the other aspect is that, what does the knowledge mean? The knowledge goes to the, it's not only the knowledge, but it's the consequences. The tribe began to appreciate how badly it was represented in the 1935 decree, to which it was not a party. But the consequences of that lack of representation were its conclusion, objectively and reasonably, that A, it was not bound, and therefore, could pursue this full entitlement of water rights above and beyond the 6,000 acre feet, and it pursued that full complement of rights in good faith per the U.S. Supreme Court and per the Ninth Circuit in the state adjudication until those water rights were cut off in 2006. Only after its rights to pursue a full complement of wet water was gone did it come to the Federal Court of Claims seeking monetary compensation. We would submit that if we had come into court anytime between 1935 and 2006, the United States would have stood here and argued that their claims are premature. Just like White Mountain, you have to go back into the state adjudication and play it out. And until it's resolved and the status of your water rights is definitively fixed, it's premature to consider compensation claims because we don't know what your water rights are. And that's all that's transpired in this case. The tribe, in good faith, standing arm in arm with the United States until the present litigation, pursued in good faith its wet water rights, pursued it in the forum and to which it was directed by the U.S. Supreme Court. And only after the guillotine came down on its full complement of winters and aboriginal rights did it come to the Federal Court of Claims seeking compensation for those lost rights. And we think that... Any questions for Mr. Horne? Thank you, Mr. Horne. And thank you, Ms. Rowntree. The case is taken under submission.